**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**UNITED STATE, EX REL.**           \*     **CIVIL ACTION NO. 07-6592**
**ROBYN WILLIAMS**                \*
       **Plaintiff-Relator**       \*
                          \*     **SECTION: H**
**VERSUS**                      \*     **JUDGE JANE TRICHE MILAZZO**
                          \*
**C. MARTIN COMPANY, INC. LAURA CRAIG,**  \*
**MEDLEY JARVIS INDUSTRIES, W. BEN MEDLEY**  \*     **MAGISTRATE: 1**
**and MICHAEL JARVIS**                \*     **MAG. SALLY SHUSHAN**
           **Defendants**        \*
                          \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


## ORDER AND REASONS

Before the Court is Defendants', Laura Craig ("Craig") and C. Martin Company, Inc. ("CMC") (collectively "CMC Defendants"), Motion to Dismiss Pursuant to First-To-File Bar (Doc. 191) and Defendants', Michael Jarvis ("Jarvis"), W. Ben Medley ("Medley"), and Medley Jarvis Industries, Inc. ("MJI") (collectively "Medley Jarvis Defendants"), Motion to Dismiss for Lack of Jurisdiction (Doc. 208). For the following Reasons CMC Defendants' Motion is GRANTED IN PART and DENIED IN PART and the Medley Jarvis Defendants' Motion is DENIED.

**BACKGROUND**

I.   *Generally*

Relator, Robyn Williams ("Williams") filed this *qui tam* action on behalf of herself and the United States to recover damages pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729-3733, alleging that Craig, CMC, Shaw Environmental, Inc., Medley, Jarvis, and MJI acted in concert to submit false and fraudulent claims to the United States, as well as conspiring to defraud the United States by getting false or fraudulent claims allowed or paid.  Time was given for the United States to intervene, however it declined to do so.  (Doc. 24.)  All claims were dismissed against Shaw on April 5, 2012.  (Doc. 84.)  Accordingly, the instant matter moved forward only against Craig, CMC, MJI, Medley, and Jarvis.

II.  *The Complaint*

In her complaint, Relator Williams alleges that Defendants violated 31 U.S.C. § 3729(a)(1)-(3) and § 3729(a)(7).  In support of her claims, Relator alleges the following facts.

In the wake of Hurricanes Katrina and Rita, the federal government through the Federal Emergency Management Agency ("FEMA") entered into contracts with various entities to provide federal disaster relief services.  In 2005, Meley and Jarvis formed MJI for the purpose of pursuing federal government contracts.  On February 1, 2006, CMC and MJI entered into a Consulting Agreement ("Agreement").  In the Agreement, MJI agreed to identify potential government contracts and prepare responses to requests for proposals and provide other services.  In return,

MJI was to receive 49% of the profits from any such contracts.  Medley, Jarvis, Craig, CMC and MJI had a working relationship for approximately one year under this Agreement.

      A.      <u>Maintenance and Deactivation Contract ("MD Contract")</u>

In November 2005, FEMA published a solicitation for a contract for the maintenance and deactivation of manufactured homes and travel trailers in Texas, Louisiana, Alabama and Mississippi.  The solicitation noted that preference would be given to local firms within the disaster area.  In a subsequent letter, FEMA stated that preference will be given to small business firms located in the State of Louisiana.  Neither CMC nor MJI had business licenses in Louisiana prior to August 29, 2005.  CMC applied for a Louisiana business license in November or December of 2005 and obtained a FEMA contract in March of 2006.

      1.      **MD Contract Bid: Local Price Preference Claim**

In March, 2006 FEMA awarded CMC a contract for the maintenance and deactivation of approximately 6,700 manufactured homes and travel trailers in Louisiana.  Williams asserts that the preference given to local contractors was a material factor in CMC being awarded the contract.  Williams alleges that the MJ Defendants assisted CMC in misrepresenting its entitlement to be considered a local small business and that the MJI, an out of state company, concealed its relationship with CMC thereby unfairly obtaining a price preference in the award of such contract.  Williams states that the MJ Defendants were aware of and facilitated this misrepresentation.

2.      **Fraudulent Performance**

The MD Contract required CMC to perform several different types of work including (I) phase in work, (ii) maintenance of temporary housing units, (iii) deactivation, removal, and transportation of temporary housing units, and (iv) customer service and quality assurance.

Williams avers that CMC was double-billing the government and Shaw for approximately a month and a half during the tenure of the MD contract.

Williams asserts that CMC submitted bids for the MD contract, entered into this contract, and submitted claims for payments under the contracts with full knowledge that it lacked the resources to fulfill the contract terms. Williams further alleges that the MJ Defendants were aware that CMC lacked such resources. Notwithstanding the awareness of CMC's inability to perform, Craig sent a letter to FEMA stating that the transition for the MD contract had been complete. The contents of this letter were false since CMC had not hired the requisite amount of staff to perform the work and misrepresented the completion of the phase-in portion of the contract in order to obtain more than $600,000 in phase-in payment.

CMC estimated that it would require over one hundred employees to perform the routine and emergency inspections and other work. In fact, CMC only had thirty to fifty employees. Despite it being evident that they lacked the personnel to perform its duties under the contracts, Craig refused to expend the money necessary to permit the hiring of sufficient additional qualified maintenance workers. As a result of this failure, CMC was unable to perform the inspection and

-4-

maintenance duties required by the contracts.  Additionally, CMC focused on performing as many emergency calls as possible for which it received extra payment.

Further, CMC never completed a required transition inspection of the various housing units to determine whether they were in need of significant repair.   Rather, CMC completed preventative maintenance inspection forms falsely indicating that these inspections had been performed.  Additionally, CMC never performed the monthly preventative maintenance inspection of any of the housing units.

B.    Group Site Ground Maintenance Contract ("GM Contract")

In May, 2006 FEMA put out a solicitation for a Group Site Grounds Maintenance Contract. The solicitation indicated that the intention was to award several contracts for the maintenance and inspection of group sites in Louisiana.  The solicitation stated that it was a Service-Disabled Veteran-Owned Small Business ("SDVOB") set-aside.

1.    **GM Contract Bid: SDVOB Claim**

Although Craig was in the Navy during the Vietnam era, she was not a service-disabled veteran and did not qualify for that designation.  Nevertheless, Craig and the MJ Defendants had conversations about bidding for a contract as a SDVOB.  The MJ Defendants facilitated conference calls with Shaw wherein Craig represented that she could get certified as an SDVOB and provided the name of a person at the VA who could get her certification.  Williams further states that the MJ Defendants and Craig had running jokes about what would be provided to her in jail if she got

caught and that if she did get caught she could claim that she was injured while doing promotional events for the Navy.  Williams alleges that the MJ Defendants were all aware that CMC did not qualify for treatment as a SDVOB, yet facilitated in its false representation as an SDVOB.

2.  **Fraudulent Performance**

Williams asserts that CMC submitted bids for the GM Contract, entered into these contract, and submitted claims for payments under the contracts with full knowledge that it lacked the resources to fulfill the contract terms.  Williams further alleges that the MJ Defendants were aware that CMC lacked such resources.  Ultimately, CMC's failure to have sufficient personnel affected its performance under the GM Contract.

C.  <u>Liquefied Petroleum Gas Certifications</u>

In May, 2006 CMC entered into a subcontract with Shaw to perform Liquefied Petroleum Gas ("LP Gas") certifications for approximately eleven thousand temporary housing units.  Under the contract, CMC was required to have qualified personnel perform pressure tests on LP Gas systems for each of the units, and submit proper certifications indicating that the tests had been performed.  CMC, however, never had enough qualified inspectors to perform such inspections as CMC hired unqualified individuals, namely those personnel that were providing general maintenance reports.  Additionally, CMC prepared numerous inspection reports that falsely stated that LP Gas inspections had been performed.

**LEGAL STANDARD**

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. Heeremac V.O.F.*, 241 F.3d 420, 424 (5th Cir.2001). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss and must show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

**LAW AND ANALYSIS**

CMC Defendants' Motion to Dismiss Pursuant to the First to File Bar is granted in part and denied in part. Specifically, Relator's claims concerning the LP Gas contracts and subcontracts are dismissed. MJ Defendants' Motion to Dismiss for Lack of Jurisdiction is denied. This Court finds

that it properly has jurisdiction because Relator's claims are not "based upon" public disclosures.

I.      *Motion to Dismiss Pursuant to First to File Bar*[1]

        A.      Arguments of the Parties

        CMC Defendants allege that Relators claims in relation to the MD Contract and the LP Gas inspections are jurisdictionally barred under the False Claims Act's ("FCA") first-to-file bar.  CMC Defendants assert that the Relator's claims are identical to those in previously filed suits.  CMC Defendants further alleges that Relator's MD Contract claims pertain to the same narrow or readily identifiable group of wrongdoers as defendants in previously filed lawsuits, and allege the same material elements of fraud as those actions.  As such, the CMC Defendants maintain that these claims are barred under §3730(b)(5).

        Relator argues that CMC's first-to-file argument is triggered by two prior complaints against unrelated mobile home contractors.  Relator avers that the first-to-file bar does not prevent prior claims against one defendant to bar claims against unrelated defendants who are not alleged to have acted in concert with the defendant in the prior action.  Relator contends that her action is not barred by any of these prior suits as they did not contain a single factual allegation against CMC, and therefore did not meet the particularity requirement of Rule 9(b).

        CMC Defendants reply and maintain that Relator's complaint contains allegations strikingly similar to those in the previous suits, and are therefore barred under 3730(b)(5).  CMC Defendants

---

[1]MJ Defendants have adopted CMC Defendants' arguments.

also aver that, even if Relator's allegations added factual details and/or geographic locations to those facts pled in the previous cases, Relator's claims would still be barred by 3730(b)(5). Lastly, CMC Defendants contend that the instant matter is barred, regardless of whether the previous suits remain pending against CMC. Because the jurisdictional analysis must be based on the facts the date the present action is filed, CMC Defendants aver that the previous suit was pending against CMC when Williams filed her action on October 9, 2007**.**

B. <u>First To File Bar</u>

"The history of the FCA's *qui tam* provisions demonstrates repeated attempts by Congress to balance two competing policy goals." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009) On the one hand, the provisions seek to encourage whistleblowers with genuinely valuable information to bring suits for the common good. *Branch*, 560 F.3d at 376. (citing *United States ex re. Laird v. Lockheed Martin Eng'g & Sci. Serv. Co.*, 336 F.3d 346, 351 (5th Cir. 2003)). On the other hand, the provisions seek to discourage opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud. *Id.* To promote the latter goal, Congress has placed a number of jurisdictional limits on the FCA's *qui tam* provisions, including Section 3730(b)(5)'s first-to-file bar. *Branch*, 560 F.3d at 376.

Section 3730(b)(5) of the FCA prevents a federal court from considering a *qui tam* action that is based on facts of another pending action. *See Branch*, 560 F.3d at 377; *see also* 31 U.S.C. § 3730(b)(5). Circuits have traditionally held that the essential inquiry is "[w]hether the later-filed

action alleges the same material or essential elements of fraud described in the pending action."
*Branch*, 560 F.3d at 377.  The Fifth Circuit applies this standard.  *See id.*  "The complaints need not
be identical for the first-to-file rule to bar the later action."  *United States ex rel. Denenea v. Allstate
Ins. Co.,* No. 07-2795, 2011 WL 231780, at *2 (E.D. La. Jan. 24, 2011).   Essentially, "as long as the
later-filed complaint alleges the same material or essential elements of fraud described in a
pending qui tam action, § 3730(b)(5)'s jurisdictional bar applies."  *Branch*, 560 F.3d at 378.  A
subsequent relator cannot avoid dismissal simply by including additional factual details in an
otherwise barred complaint.  *Id.*

       The first-to-file restriction is jurisdictional in nature.  *Denenea*, 2011 WL 231780 at *2.
Because a court must have jurisdiction at the time suit was filed, courts are directed to consider
the jurisdictional facts at the time the Relator files the original complaint.  *Id.*

       C.      Previous Complaints

       On December 21, 2006 relators Terry D. McLain and J. Len Hodges ("McClain Complaint")
filed a *qui tam* action alleging that CMC and fifteen other government contractors had defrauded
the federal government.  The Complaint alleged that these defendants had obtained contracts to
install and maintain liquified petroleum ("LP") gas systems in temporary homes used by persons
displaced by Hurricane Katrina fraudulently.  Specifically, relator alleged that the contractors had,
through their employees or subcontractors, unlawfully installed LP gas services in these homes by
not first obtaining the proper permits or training.  They also accused the contractors of presenting

claims to FEMA for payments for these knowingly unlawful installations.  McLain and Hodges later amended their pleading and voluntarily dismissed both CMC and Craig when doing so.

Jerry McIntyre ("McIntyre Complaint") filed a complaint on December 21, 2006 alleging that two government contractors, 3-D Disaster Services and Johnny's RV, submitted payment claims for maintenance work never performed on the temporary homes FEMA provided to displaced Katrina victims.  The McIntyre Complaint further alleged that the McIntyre defendants made false records or statements in order to get fraudulent claims paid or approved by the United States.

Brenda DeCastro ("DeCastro Complaint") filed a separate complaint on June 22, 2007 alleging that Jacquet Construction Services, LLC ("JCS") submitted false payment claims for maintenance work never performed on the temporary homes FEMA provided to displaced Katrina victims.  Specifically, the DeCastro Complaint alleged that JCS was in jeopardy of losing its contract with FEMA based on its own failure to complete preventative maintenance forms.  Relator alleged that JCS employees were ordered to make up dates of attempted service so that their preventive maintenance forms would be complete for submittal to FEMA.  Lastly, Relator argued that JCS offered and paid a $50 bonus to each employee who forged this form.

      D.   <u>Analysis</u>

           1.   **LP Gas Claims**

This Court grants CMC Defendants Motion as to Relator's LP Gas claims.  The Court finds that these claims are barred under Section 3730(b)(5), as they contain the same material elements

of fraud as the allegations in *United States of America ex rel Terry D. McLain and Jen L. Hodges v. Flour Enterprises, et al.*

Relator's LP Gas claims trigger the first-file-bar since they are based on the same set of underlying facts identified in the McClain Complaint. Relator's action contain allegations with material elements of fraud  that are nearly identical to those in the McClain Complaint - namely that CMC  had unqualified employees perform inspections on the LP Gas systems in the temporary homes that FEMA provided in the wake of Katrina and that CMC billed FEMA for these unlawful inspections .  The Court finds that Relator's accusation in the instant matter is merely another way of stating that CMC did not have the proper permits or qualifications necessary for its employees to install or maintain LP Gas systems for use in temporary housing, yet still sought payment from FEMA.   As such, the instant matter alleges the same material or essential elements of fraud described in the first action and is jurisdictionally barred by 31 U.S.C. § 3730(b)(5).

Although Relator argues that McLain's allegations against CMC are vague and skeletal, Relator's own allegations are just as general. Relator's allegations add only a single detail about the nature of employment of the untrained inspectors, which is exactly the type of embellishment the Fifth Circuit has clearly stated will not allow a complaint to survive the first-to-file bar. *Branch,* 560 F.3d at 378.

Relator's argument that McLain's LP Gas claims should not bar hers because they "run afoul of the heightened pleading requirements of Rule 9(b)" ignores the difference in the level of

similarity between the two sets of successive actions.  *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005).  In contrast to *Walburn*, Relator's allegations are virtually identical to those contained in the McClain Complaint.  Thus, it is if the McClain Complaint does not meet the heightened pleading standards of Rule 9(b), then the allegations in the present action necessarily also fail to meet them.

Relator's argument that the McClain Complaint is not "pending" as required by Section 3730(b)(5) ignores *Branch* and is also without merit. *See Denenea*, 2011 WL 231780 (E.D. La. Jan. 24, 2011) (rejecting the argument that relator's allegations could not be barred by a action that was pending at the time relator's complaint was filed because it had since been dismissed). McLain's claims against CMC were pending when this action was filed on October 9**,** 2007 and it is of no consequence that McLain has since dismissed CMC as a defendant.

Lastly, the allegations in the McClain Complaint have served the purpose of the FCA by notifying the federal government of the potential existence of fraud in its contracts with CMC.  The Court finds that the allegations in the present complaint do nothing to alert the government of any potential for fraud not already encompassed by the McClain Complaint. Therefore, Relator's LP Gas Claims are dismissed under Section 3730(b)(5)'s first-to-file bar.

      2.    **MD Contract Claims**

In *Branch*, the Fifth Circuit held that a claim against one party does not serve to bar subsequent claims against entirely unrelated parties. 560 F.3d at 380.  In reaching this decision, the

*Branch* court contemplated an exception to its holding - a scenario in which the "allegations in a first-filed complaint pertain to such a narrow or readily-identifiable group of potential wrongdoers that it serves to bar subsequent actions against previously unnamed defendants." *Id*.   Thus, in order to be encompassed within the first-to-file bar, the original complaint must allege "allege true industry-wide fraud" or a concerted action among a narrow group of participants in order to prohibit later filed *qui tam* actions. *Id*.   The Court held that this exception could also apply to corporate affiliates and subsidiaries and small groups of carefully-monitored federal contractors. *Id*.

The Fifth Circuit allowed Branch's claims to proceed because the first-filed allegations pertained to a members of a large group of insurers.   In reaching this conclusion, the Branch court reasoning that the allegations in the original action did nothing to put the government on the trail of fraud conducted by the other ninety-five insurers. *Id*.   The Court finds that, similarly, the McIntyre Complaint and the DeCastro Complaint did nothing to put the government on notice of other potential defendants.   As such, the concerns of notice and efficiency present in *Branch* are present here.   Accordingly, CMC Defendants' Motion to Dismiss as to the MD Contract claims is denied.

II.     *Motion to Dismiss for Lack of Jurisdiction*[2]

The Court finds that Relator's Complaint is not "based upon" public disclosures.

---

[2]CMC Defendants adopt MJ Defendants' arguments.

Accordingly, this Court properly retains jurisdiction.

A.    Arguments of the Parties

MJ Defendants aver that all of Relator's claims must be dismissed because they are jurisdictionally barred.  MJ Defendants maintain that because there was public disclosure of all of Relator's claims prior to the filing of the instant matter this court does not have jurisdiction.  Specifically, MJ Defendants contend that the allegedly fraudulent bid for the MD Contract (categorized as "price preference claim" by MJ Defendants) is barred because these allegations were raised in (1) articles published in the Times-Picayune in April, 2006; (2) a Congressional oversight hearing on May 19, 2006; (3) an Inspector General's investigation and report released on March 30, 2007; and (4) a bid protested filed on April 28, 2006 by another contractor who submitted a bid for the MD Contract.  MJ Defendants also contend that the allegedly fraudulent bid for the GM Contract (categorized as "service-disabled claim by MJ Defendants) is barred because these allegations were raised in a Small Business Administration ("SBA") protest filed on May 17, 2007 alleging that CMC was not a service-disabled veteran-owned small business.

Relator maintains that the documents cited by the MJ Defendants are not public disclosures.  Relator further argues that if the documents are considered public disclosures, they are not based upon are not substantially similar to Relator's allegations.  Relator contends that none of the public disclosures say anything about wrongful conduct, that there were any concealed arrangements, or that any contractor committed fraud.  Importantly, Relator affirms that she is the

original source of her Complaint.

      B.    <u>Public Disclosure and the Original Source Exception</u>

      1.   **Standard**

Under 31 U.S.C. § 3730(e)(4)(A):

> No court shall have jurisdiction over an action . . . based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or government accounting office report, hearing audit, or investigations, or from the news media, unless . . . the person bringing the action is an original source of the information.

Section 3730(e)(4)(A) is a jurisdictional inquiry which requires courts to assess the following three questions: "(1) whether there has been a public disclosure of allegations or transactions; (2) whether the qui tam action is based upon such publicly disclosed allegations, and (3) if so, whether the relator is the original source of the information." *United States ex rel. Reagan v. East Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 172 (citation and quotations omitted).

      2.   **Public Disclosure**

      a.   *MD Contract Bid: Local Price Preference Claim*

Defendants argue that there have been four instances of public disclosures that are the heart of Relator's Local Price Preference Claim.  The specifics of these disclosures will be discussed in detail below.

First, Defendant argues that were articles published in the Times Picayune in April, 2006. The first article, dated April 12, 2006, is entitled "Rage Renewed as FEMA Redoes Bids: Local

Contractors Feel Locked Out From Deals."  The article cites that FEMA appears to dole out more than half the work to out-of-state companies in rebidding of contracts to service travel trailers in Louisiana, despite federal assurances that the process would favor local firms.  A local Louisiana business owner, Kenny Edmonds, provided comment for the article and stated that he was stunned to be rejected after he learned that four of the businesses were out of state businesses.  One of the businesses identified by Edmonds was CMC.  The article concluded with Edmonds asserting that there were too many questions surrounding the process to believe it was fairly administered and demanded FEMA to post the winning bids for public scrutiny.  The second article, dated April 22, 2006, focuses on cronyism in awarding the FEMA contracts.  Neither CMC nor any other defendant is mentioned.

Second, Defendants contend that Relator's allegations were raised in a Congressional oversight hearing on May 19, 2006.  A Senate Democratic Policy Committee Hearing ("Hearing") was held to discuss the oversight of Gulf Coast reconstruction in the wake of Hurricane Katrina. The Hearing identified FEMA's focus to award bids to local disaster-area companies.  A participant identified that FEMA had stated notified potential bidders that non-local companies would have a thirty percent upward adjustment in order to give local firms preference.  In the end, the participant stated that he was told that technical experience would be the first criterion, then price. One participant stated that some companies did not follow the rules and guidelines that FEMA had established.  Senator Dorgan concluded the Hearing by asking the Inspector General to investigate

a range of claims about contract abuse.  Neither CMC nor any other defendant was mentioned at the Hearing.

Third, Defendants maintain that the Inspector General's Investigation and Report constituted a public disclosure.  The report states that, to install, maintain, and deactivate manufactured housing units, FEMA awarded thirty six contracts based on eight solicitations; two in each of four states.  The investigation found that FEMA treated bidders fairly during the process, however should have established better criteria for determining whether a bidder was a local firm.  The investigation further found that they saw no evidence that winning bidders lacked technical qualifications, but did see evidence that some bidders did not have sufficient financial strength to perform the tasks assigned.  Neither CMC nor any other defendant was mentioned in the investigative report.

Lastly, Defendants assert that a bid protest ("Bid Protest") filed with the United States Government Accountability Office ("GAO") constitutes public disclosures.  The Bid Protest identified that many of the awardees of the FEMA contracts did not meet the eligibility requirements for the price preference and should not have received it.

The District Court in Branch assessed similar "public disclosures" as the case before us. *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 668 F.Supp.2d 780, 789–92 (E.D. La. 2009).  The Court noted that information obtained from news sources, Congressional hearings, and investigations are all public disclosures as contemplated by the FCA. *Id.* at 791.  This Court

finds that the Bid Protest cannot be considered a public disclosure.[3]

It is evident that the materials publicly disclose the *potential* for fraud by companies bidding for maintenance and deactivation contracts in the wake of Hurricane Katrina.  On the other hand, the public disclosures make very generalized accusations about potential fraud and for a variety of reasons.  As such, not one of the public disclosures outlines a fraudulent scheme or identify any defendant in this action.  Indeed, CMC was only mentioned in one of these documents as being an out-of-state recipient for an awarded MD Contract.  There was no fraud alleged against CMC in the news article.

The Eleventh Circuit noted that it is crucial to consider whether a defendant was mentioned by name or otherwise specifically identified in public disclosures.  *Id.* at 792 (citing *Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 566 (11th Cir. 1994)).  The *Cooper* court held that allegations of widespread fraud is insufficient to trigger the jurisdictional bar when the defendant is not specifically named or directly identified.  *Id.*  The court reasoned that, "[r]equiring that

---

[3]

Although the Fifth Circuit has not addressed this issue, one of our sister courts has utilized Fourth Circuit jurisprudence in determining whether a bid protest constitutes public disclosure.  *See United States ex re. Barrett v. Johnson Controls, Inc.*, No. 3:01-cv-1641-m, 2003 WL 21500400, at *7 (N.D. Tex. Apr. 9, 2003).  The Fourth Circuit has held that a protest filed with an administrative agency constitutes a public disclosure so long as the protest is not filed under seal and is available from the agency upon request.  *Id.* (citing *Grayson v. Advanced Mgmt. Tech., Inc.*, 221 F.3d 580 (4th Cir. 2000).  At the bottom of the Bid Protest it states that it is "protected material to be disclosed only in accordance with government accountability office protective order."  Because it is under protective under and can only be disclosed under the same the Court finds that this Bid Protest is not a "public disclosure."

allegations specific to a particular defendant be publicly disclosed before finding the action potentially barred encourages private citizen involvement and increases the chances that every instance of specific fraud will be revealed."  *Id.*

On the other hand, the District Court in *Branch* also discussed the Seventh Circuit in reaching an opposite decision.  *Branch*, 668 F.Supp.2d at 793; *see also United States ex re. Gear v. Emergency Medical Associates of Illinois, Inc.*.  436 F.3d 726 (7th Cir. 2006).  The Seventh Circuit in *Gear* held that information had been publicly disclosed regardless of whether the defendants in that action were specifically named in the materials.  *Id.* (citing *Gear*, 436 F.3d at 728–29).  Because the disclosures were of industry-wide abuses and investigations, the Court found that the defendants were necessarily identifiable from the public disclosures.  *Id.* (citing *Gear*, 436 F.3d at 729).

The District Court in *Branch* further highlighted a decision of the Tenth Circuit which reached the same conclusion as *Gear*.  *Branch*, 668 F.Supp.2d at 793–94; *see also United States ex rel. Fine v. Sandia Corp.*, 70.3d 568, 569–70 (10th Cir. 1995).  The Tenth Circuit in *Fine* held that when the GAO issued a report indicating two companies were engaging in illegal appropriation practices and a congressional hearing later examined the same, then the allegations were publicly disclosed.  *Id.* (citing *Fine*, 70.3d at 569–70).  Because the government was made aware of the alleged fraud of a small group of companies, the Tenth Circuit found that the report and the hearing constituted public disclosure.  *Id.*  Notably,  the Tenth Circuit distinguished this decision

from that reached in *Cooper. Id.* In *Fine* the public disclosures exposed the fraudulent practices

of two of the eight labs identified, whereas in *Cooper* there were broad allegations made against

an entire industry. *Id.*

The Court finds the instant matter to be more similar to those found in *Branch* and *Fine*.

Because there were a small group of out of state companies awarded the MD Contracts, the

government was made aware of any potentially fraudulent activities.  Accordingly, the Court finds

that "public disclosures" were made in relation to the MD Contract Local Business claims.

> b.    *GM Contract Bid: SDVOB Claim*

Defendants aver that Relator's SDVOB Claim has been publicly disclosed because the SBA

filed a protest on May 17, 2007 alleging that CMC was not a SDVOB.  Contained in the record is the

SBA Protest and a decision by the SBA regarding CMC's status as a SDVOB.

An administrative hearing is an enumerated public disclosure. *See* 31 U.S.C. § 3730(e)(4)(A).

An administrative hearing is interpreted to also include the filing of an administrative complaint.

As noted previously, when the filing of such complaint or protest is not filed under seal and

available at request then this is considered publicly disclosed.  There is no evidence that this was

filed under seal and/or not available at request.  Accordingly, the Court finds that this was publicly

disclosed.

> 3.    **Based Upon Public Disclosure**

"The existence of a public disclosure does not automatically divest the court of jurisdiction

over the suit." *Branch*, 668 F.Supp.2d at 795.  Indeed, "the FCA action must also be 'based upon' the public disclosre." *Id.*  Ultimately, "a lawsuit is based upon publicly disclosed allegations when the relator's allegations and the publicly disclosed allegations are substantially similar." *Id.* at 796–97.  (holding that the Fifth Circuit would require only substantial similarity between the allegations before the jurisdictional bar is invoked) (citation omitted).

The Court finds that Relator's Complaint is not "based upon" the public disclosures.  Accordingly, Relator's claims are not jurisdictionally barred and this Court properly retains jurisdiction.

a. <em>MD Contract Bid: Local Price Preference Claim</em>

As this Court previously discussed, the public disclosures in relation to the MD Contracts were general allegations of wrongdoing combined with an undifferentiated list of defendants.  Not one of the public disclosures lists Craig, Medley, Jarvis, or MJI.  Only one of these documents identifies CMC.  Importantly, this document merely identifies that CMC is an out of state company.  Nowhere in the article does it mention that CMC participated in a fraudulent scheme, lied about its designation as a local business, or participated with other companies in perpetuating a fraudulent scheme.  In all of these documents there are generalized allegations of *potential* wrongdoing, however no essential elements of fraud claims.  The allegations contained in these public disclosures is in no way similar, much the less substantially similar, to Relator's Complaint.  Accordingly, this Court finds that the MD Contract-Local Business Preference Claims are not based

upon the public disclosures.

b.    *GM Contract Bid: SDVOB Claim*

The public disclosures in relation to the SDVOB were much more particularized than those in relation to the MD Contract-Local Business Preference.  On the other hand, the documents from the administrative procedures in no way indicate fraud on behalf of any of the defendants. Additionally, Relator brings specific allegations in her Complaint identifying the discussion in bidding for a contract as an SDVOB regardless of Craig's awareness that she was not a service disabled veteran.   Additionally, Relator details conversations and agreements with other defendants in its venture to become a SDVOB.  It is evident to this Court that Relator's allegations in no way stem from the generalized administrative documents provided to this Court. Accordingly, this Court finds that the GM Contract-SDVOB Claim is not based upon public disclosures.

c.    *Conclusion*

"A *qui tam* action is based upon public disclosures if it repeats what the public already knows, regardless of whether or not Relators learned about the fraud independent of the public disclosures." *United States ex rel. Lam v. Tenet Healthcare Corp.*, 482 F.Supp.2d 673, 683 (W.D. Tex. 2006) (citation omitted).  The Court finds that based on the public disclosures and the allegations made in the Complaint, her Complaint cannot be "based upon" the public disclosures. Relator's Complaint is much more detailed, in depth, and different than these disclosures to make

a finding that they were "based upon" the public disclosures.  Although the Court finds that the record before it currently reveals that Relator's allegations are not "based upon" public disclosures, the Court notes that, should discovery reveal more information, the parties are able to raise this issue again.  *See Henderson ex re. Henderson v. Shinseki*, 131 S.Ct. 1197, 1202 (2011) ("bjections to subject-matter jurisdiction . . . may be raised at any time").

          4.     **Original Source**

If the answers to the previous two questions had both been in the positive, then this Court would be tasked with determining whether Williams was an "original source" of the information. Because this Court finds that Relator's Complaint was not "based upon" the publicly disclosed information, this Court does not need to address this third step.

## CONCLUSION

For the foregoing reasons, CMC Defendants' Motion to Dismiss Pursuant to First-To-File Bar (Doc. 191) is GRANTED IN PART and DENIED IN PART.  Accordingly, the LP Gas claims of Relator are dismissed.  The MJ Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 208) is DENIED.  Accordingly, this Court has proper jurisdiction over Relator's remaining claims.

New Orleans, Louisiana this 23rd day of August, 2013

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**